**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| MARTHA FRAZIER, | ) | No. EDCV 04-00410 CW |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge. Plaintiff seeks review of the Commissioner's denial of disability benefits. As discussed below, the court finds that the Commissioner's decision should be reversed and this matter remanded for further proceedings.

**I.   BACKGROUND**

Plaintiff Martha Frazier was born on July 30, 1955, and was forty-seven years old at the time of her administrative hearing. She has a high school education and past relevant work experience as a meteorologist, field dispatcher, cashier, hotel housekeeper and in-

home housekeeper. [AR 18.]  Plaintiff claims disability on the basis of depression, anxiety, low back pain, lower extremity swelling and migraine headaches. [AR 74.]

## II.   PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on April 6, 2004, and filed on April 8, 2004.  On October 21, 2004, defendant filed plaintiff's Administrative Record ("AR").  On December 21, 2004, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III.   PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on March 19, 2001, alleging disability since November 1, 2000.  [JS 1, AR 18.]  An administrative hearing was held on January 24, 2003, before Administrative Law Judge ("ALJ") David L. Wurzel.  [Transcript, AR 228.]  Plaintiff appeared with counsel, and testimony was taken from plaintiff and vocational expert Joseph Mooney. [Id.]  The ALJ denied benefits on April 14, 2003.  [Decision, AR 27.]  When the Appeals Council denied review on January 26, 2004, the ALJ's decision became the Commissioner's final decision.  [AR 4.]

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the court determines that a finding is based on legal error or is not

supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## V.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial

>gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>    Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>    Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>    Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155

1 education, and work experience, a claimant can perform other work
2 which is available in significant numbers. Tackett, 180 F.3d at 1098,
3 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

In plaintiff's case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 1, 2000 (step one). [AR 18.] Plaintiff was found to have "severe" impairments, namely degenerate joint disease of the cervical spine, very slight scoliosis, unequal leg lengths (the left being one centimeter shorter than the right), trochanter bursitis of the left hip, plantar fasciitis, headaches, asthma, post-traumatic stress disorder, and major depressive disorder versus psychotic order "not otherwise specified" versus history of schizophrenia with agoraphobia (step two). [AR 22.] The ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [Id.] Finally, the ALJ found that plaintiff retained an RFC enabling her to perform her past relevant work as a hotel housekeeper (step four). [AR 26.] Thus, plaintiff was found "not disabled" as defined by the Social Security Act. [Id.]

**C.   ISSUES IN DISPUTE**

The Joint Stipulation identifies five disputed issues as follows:

1. Whether the ALJ properly considered the medical opinions of a "treating" physician and examining psychiatrist;

2. Whether the ALJ properly assessed plaintiff's credibility;

3. Whether there were sufficient findings to support the ALJ's conclusion that plaintiff's impairments did not meet or equal the "listings";

---

n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

    4.    Whether the hypothetical questions posed to the vocational expert accurately accounted for plaintiff's functional limitations; and

    5.    Whether the ALJ fully developed the record regarding plaintiff's impairments during a prior period of disability.

[JS 3.]

**D.    ISSUE ONE: THE MEDICAL OPINIONS**

Ninth Circuit cases distinguish among the opinions of three types of physicians: those who treat the claimant (treating physicians), those who examine but do not treat the claimant (examining or consultative physicians), and those who neither examine nor treat the claimant (non-examining physicians). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of a treating physician is given deference because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)(citations omitted). "The opinion of the treating physician, however, is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Magallanes, 881 F.2d at 751; Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989).

" 'An administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'" Reddick, 157 F.3d at 725 (quoting Matthews v. Shalala, 10 F.3d at 678, 680 (9th Cir. 1984))(quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see also Lester, 81 F.3d at 830. Even if a treating physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial

evidence in the record.  <u>Lester</u>, 81 F.3d at 830.  <u>See also</u> <u>Benecke v. Barnhart</u>, 379 F.3d 587, 591 & n.1 (9th Cir. 2004).  The ALJ must also provide specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician.  <u>Lester</u>, 81 F.3d at 830-31.

Here, the record indicates that plaintiff received medical treatment at the VA Hospital in Loma Linda from May to June 2001. [AR 131, 124.]  In May 2001, Dr. Sandra Lawrence, a psychologist, recorded plaintiff's psychiatric and physical history and conducted a mental status examination. [AR 209-217.]  Dr. Lawrence noted that plaintiff reported experiencing auditory and visual hallucinations, having recurrent depressive episodes since childhood, feeling anxious and avoiding people. [AR 209.]  Dr. Lawrence diagnosed plaintiff with chronic post-traumatic syndrome disorder and a psychotic disorder not otherwise specified and opined that plaintiff's symptoms "clearly prevent her from maintaining competitive employment." [AR 216.]  Plaintiff was prescribed Zyprexa to address her auditory hallucinations. [AR 216.]  Four weeks later, Dr. Lawrence reported that the medications prescribed to plaintiff stopped the auditory hallucinations and that plaintiff was experiencing "less irritability, less anxiety and less tearfulness," but that she continued to have "poor energy, low motivation, and depressed mood." [AR 126.]

Six months later, in December 2001, Dr. Trust Hf conducted a psychiatric examination of plaintiff. [AR 198-200.]  Dr. Hf noted plaintiff's history of auditory hallucinations and that the last time she heard voices was "a few years ago." [AR 198.]  Dr. Hf diagnosed plaintiff with a psychotic disorder, not otherwise specified, and concluded that although plaintiff could perform simple and repetitive

tasks, she may not accept instructions from supervisors, has anger problems, would not perform work activities on a consistent basis, and could not attend work regularly because "she is still hearing voices." [AR 200.]

To the extent that Dr. Lawrence and Dr. Hf opined that plaintiff was disabled, the ALJ rejected both opinions. The ALJ reasoned that both doctors relied heavily on plaintiff's self-reported history, which was deemed unreliable. [AR 23.] The ALJ also noted that neither doctor made significant clinical findings and that their mental status examinations were unremarkable. [Id.] It was pointed out that Dr. Lawrence did not do any psychological testing and that her brief treatment of plaintiff (consisting of two visits) did not qualify her as a treating physician. [AR 20, 23.] Dr. Hf's evaluation was rejected for inconsistently stating both that plaintiff had not heard voices for a few years and that she was incapacitated because she still hears voices. [AR 23.]

Under the Ninth Circuit's standard for the evaluation of medical evidence, the ALJ gave "specific and legitimate reasons" to reject Dr. Hf's opinion, but not Dr. Lawrence's. As for Dr. Hf's opinion, the internal inconsistency in his evaluation, in which it is unclear whether he believes plaintiff continues to experience auditory hallucinations, is sufficiently specific and legitimate to discount his finding of disability. See Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992)(inconsistencies and ambiguities in medical opinion are specific and legitimate reasons to reject it). Dr. Lawrence's opinion, however, does not suffer from the same defect.

Contrary to the ALJ's characterization, Dr. Lawrence's opinion was not based entirely on plaintiff's subjective complaints, and her

mental status examination of plaintiff was not "completely unremarkable." [AR 20.]  Rather, Dr. Lawrence's examination revealed that plaintiff suffered from visual illusions and auditory hallucinations, and it contained Dr. Lawrence's objective observations of plaintiff's dysphoric mood and a blunted affect. [AR 136-137.] Furthermore, the fact that Dr. Lawrence did not conduct psychological testing does not invalidate her evaluation of plaintiff.  See Bilby v. Schweiker, 762 F.2d 716, 718 (9th Cir. 1985)(psychiatric opinion may be based on medically acceptable clinical diagnoses as well as objective laboratory findings)(citing Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)(when treating physician diagnosed claimant with psychiatric impairment, set forth clinical observations supporting the diagnosis, and prescribed psychotherapeutic drugs, ALJ erred in finding claimant had not set forth sufficient evidence to substantiate mental impairment).

    Neither does the fact that Dr. Lawrence may have seen plaintiff only twice necessarily mean that there was no treating relationship. First, although the record contains only two treating records from Dr. Lawrence (the latest from May 31, 2001), plaintiff's testimony raises the possibility that there were additional visits with Dr. Lawrence or other psychiatrists or mental health professionals.  Plaintiff testified that she received psychiatric treatment only once since May 2001, but she also testified that she visited the VA until November 2002, that she saw multiple psychiatrists, and that she had monthly sessions with a trauma counselor (which were eventually scaled back to once every six months due to plaintiff's transportation problems). [AR 252, 256, 257, 261.]  The only VA records available in the

administrative record are dated from May to June 2001. [AR 124, 131.] Although plaintiff's testimony regarding the time frame of her treatment at the VA Hospital is not entirely clear, further development of the psychiatric record is required for additional evidence pertinent to plaintiff's mental impairments. See Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992)(per curiam)(citing Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)).

Second, even if it turns out that Dr. Lawrence saw plaintiff only twice, this does not necessarily mean that there was no treating relationship. The Ninth Circuit has held a physician may be credited as a treating source even though contact with the patient was as infrequent as a "few times" or twice a year, as long as the patient is seen with a frequency consistent with accepted medical practice for the type of treatment required. Benton v. Barnhart, 331 F.3d 1030, 1035-1036 (9th Cir. 2003)(holding that a psychiatrist who saw plaintiff only once as part of a medical treatment team may be considered a treating source, given that it was accepted medical practice to manage patient's psychiatric care without regular visits); see also Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994)(physician who saw claimant twice during 14-month period should be afforded treating source status).

Finally, even if the circumstances of this case require that Dr. Lawrence not be considered a treating source, her opinion would nonetheless "fall between the two extremes" of a treating and non-treating source and would be entitled to at least the weight of an examining physician. Benton, 331 F.3d at 1038. Although the ALJ's decision correctly stated that he was not bound by Dr. Lawrence's opinion of disability, the ALJ was still required to provide specific

and legitimate reasons supported by substantial evidence in the record to discount Dr. Lawrence's opinion, even if she is considered only an examining source. [AR 23.]; Lester, 31 F.3d at 830. The ALJ has not done so. This would require that Dr. Lawrence's opinion be credited as true. Lester, 81 F.3d at 834; Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000.) Even so, however, it is not clear that plaintiff must be found disabled. Dr. Lawrence's opinion does not indicate the length of time that plaintiff would be "prevented from maintaining competitive employment" or whether medication would have an effect on plaintiff's ability to work. [AR 216.] Neither is there any indication that plaintiff was functionally limited to no interpersonal contact or was incapable of attending work regularly, either of which, according to the vocational expert, would preclude plaintiff from performing any work. [AR 285, 287.] If there are additional medical records that address these issues, they should be obtained. A new assessment of plaintiff's RFC should then be made that reflects the newly obtained treating evidence and the crediting of Dr. Lawrence's opinion. The ALJ can accomplish this by having Dr. Lawrence recontacted or applying the credited evidence to a new RFC assessment.

**E.   THE REMAINING ISSUES**

The remaining disputed issues either do not provide grounds for reversal of the ALJ's decision or are no longer pertinent given the resolution of Issue One.

With respect to Issue Two, the ALJ determined that plaintiff's testimony was not credible for several reasons[2], the most salient one

---

[2] The reasons cited by the ALJ to discredit plaintiff's testimony were that no treating physician opined or identified disabling impairments or limitations; two state agency review

being that plaintiff's statements regarding her auditory hallucinations were "significantly inconsistent." [AR 25.]  The record shows that plaintiff made disparate statements regarding the duration of the "voices" she heard.  Plaintiff initially told Dr. Lawrence that she heard the voices every day, but four weeks later reported that the voices stopped due to the medication she was taking. [AR 126, 209.] Plaintiff then reported to Dr. Hf that the voices stopped a few years ago and/or that she was still hearing them. [AR 198, 200.]  During the administrative hearing, plaintiff testified that the voices come and go and that exercise and medication make the voices "not as angry." [AR 267, 270, 271.]  When these inconsistencies are considered with some of the other reasons cited by the ALJ, there were "clear and convincing" reasons to decline to credit plaintiff's subjective complaints.  See Tonapetyan, 242 F.3d at 1147 (inconsistencies in plaintiff's testimony may be used to decline to find plaintiff credible); see also Light v. Social Security Admin., 119 F.3d 789, 791 (9th Cir. 1997); Orteza v. Shalala, 50 F.3d 748, 749 (9th Cir. 1995).

In Issue Three, plaintiff argues that her impairments, considered collectively, equal a "listed" impairment at Step Three of the sequential evaluation.  Plaintiff cites no theory or evidence, other than a recitation of her impairments at Step Two of the sequential evaluation, as to how her impairments would combine to equal a

---

physicians opined that plaintiff can perform a range of light work; the treating records show rapid and substantial improvement with medication, with no debilitating side effects; the plaintiff was inconsistent regarding whether her auditory hallucinations stopped; an examining physician opined that plaintiff could perform light work; clinical signs and x-rays of plaintiff's physical impairments were unremarkable; plaintiff was significantly inconsistent in her self-reporting of auditory hallucinations and agoraphobia; and her demeanor at the administrative hearing was poor. [AR 25.]

listing. [JS 19.]  Under these circumstances, the ALJ correctly found that plaintiff's conditions did not equal a listed impairment.  See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001)(ALJ properly rejected Step Three argument based on plaintiff's failure to offer theory or evidence as to how his conditions equaled a listed impairment).

In Issue Four, plaintiff argues that the hypothetical questions posed to the vocational expert regarding jobs that plaintiff could perform failed to account adequately for plaintiff's functional limitations. [JS 22.]  As discussed above, further development of the record is required regarding plaintiff's psychiatric treatment records at the VA Hospital and the assessment of her functional limitations.  Accordingly, Issue Four is moot.

In Issue Five, plaintiff argues that further development of the record is required to obtain medical records covering treatment plaintiff received for a prior period of disability. [JS 23.]  In 1999, plaintiff was found disabled on the ground that her mental disorder met the requirements of Listing 1.04 (Affective Disorders). [AR 17.]  Plaintiff's benefits were terminated, however, in July 2000 on the basis of "medical improvement." [AR 17, 83.]  Plaintiff contends that psychiatric records dating from the mid to late 1990s, covering the prior period of disability, should be considered to determine whether the finding of medical improvement was warranted. [JS 23-24.]  However, plaintiff did not appeal the termination of her benefits or seek a reopening of that case. [AR 17.]  Accordingly, there is no duty to develop the record regarding the prior period of disability.  See Taylor v. Heckler, 765 F.2d 872, 876 (9th Cir. 1985)(when claimant failed to seek reconsideration of denial of

1 disability claim, the determination became the binding final decision
2 of the Secretary).

### F. REMAND FOR FURTHER PROCEEDINGS

The decision whether to remand for further proceedings is within the discretion of the district court. Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir. 2000). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Harman, 211 F.3d at 1179 (decision whether to remand for further proceedings turns upon their likely utility). However, where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. Id. Here, as set out above with respect to Issue One, outstanding issues remain before a finding of disability can be made. Accordingly, remand is appropriate.

### VI. ORDERS

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **REVERSED**.

2. This action is **REMANDED** to defendant, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings as discussed above.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: December 14, 2005

_/s/_____
CARLA M. WOEHRLE
United States Magistrate Judge